IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| CAROLYN MCCOLLOUGH, | : |
| | : |
| Plaintiff, | : |
| | : |
| VS. | : |
| | : 7 :12-CV-37 (HL) |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| | : |
| Defendant. | : |
| | : |

## RECOMMENDATION

Plaintiff herein filed this Social Security appeal on March 8, 2012, challenging the Commissioner=s final decision denying her application for disability benefits, finding her not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh

the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 404.1520. In Step One, the Commissioner determines whether the claimant is working. In Step Two, the Commissioner determines whether the claimant suffers from a severe impairment which significantly limits her ability to carry out basic work activities. At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations. At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work. Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

Plaintiff filed an application for disability insurance benefits and Supplemental Security Income on May 11, 2009. (Tr. 15). Her claim was denied initially and upon reconsideration. (Tr. 44-51, 54-60). A video hearing was held before an Administrative Law Judge ("ALJ" who presided from Savannah, Georgia on May 13, 2010. (Tr. 15). Thereafter, in a hearing decision dated July 6, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 15-26). The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the

Commissioner.   (Tr. 1-3).

*Statement of Facts and Evidence*

The Plaintiff was thirty-seven (37) years of age at the time of the hearing before the ALJ, and alleged disability since April 23, 2009, due to problems with fibromyalgia, bad headaches, depression, asthma, and diabetes. (Tr. 29, 148).   Plaintiff completed twelfth grade, and has past relevant work experience as a retail clerk and a fast food worker.   (Tr. 24, 29).

As determined by the ALJ, Plaintiff suffers from the following severe impairments: "obesity; uncontrolled diabetes mellitus; and fibromyalgia[.]" (Tr. 17).   The ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment, and she remained capable of performing a full range of medium work.   The ALJ found that Plaintiff could return to her past relevant work, and thus was not disabled. (Tr. 24-25).

## DISCUSSION

Plaintiff alleges that the ALJ erred by demanding "objective" findings of Plaintiff's fibromyalgia, by failing to properly consider Plaintiff's credibility, and by failing to give proper weight to Plaintiff's treating physicians. (Doc. 18).

*Fibromyalgia*

Plaintiff asserts that the ALJ appeared to require objective medical evidence to substantiate her claims of a totally disabling condition of fibromyalgia.   (Doc. 18).   Plaintiff states that requiring objective evidence regarding her "severe" impairment of fibromyalgia was error.

The "hallmark" of fibromyalgia is the lack of objective evidence; it is a condition "which often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms."   *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005).   "[A] treating physician's

testimony can be particularly valuable in fibromyalgia cases, where the objective evidence is often absent." *Id*. at 1212. "Symptoms of fibromyalgia include chronic muscle pain, severe fatigue, pain upon palpation of tender points, insomnia, jaw pain/tenderness, numbness in the legs and feet, dizziness and depression." *Andino v. Comm'r of Social Sec.*, 2012 WL 834122, *11 (M.D. Fla. Feb. 15, 2012) (citing *Somogy v. Comm'r of Social Sec.*, 366 Fed. Appx. 56, 64 (11th Cir. 2010)).

The ALJ found that Plaintiff did suffer from a severe impairment in the form of her fibromyalgia. (Tr. 17). However, the ALJ determined that the objective findings of fibromyalgia were unimpressive and conflicted with the extent of Plaintiff's alleged symptoms. (Tr. 21-22).

The ALJ found that Plaintiff did not have the presence of 11 of 18 tender points, which he stated is the criteria for the diagnosis of fibromyalgia. (Tr. 21-22). The record, however, shows that, on August 6, 2009, Dr. William Tidmore, Plaintiff's rheumatologist, found Plaintiff had trigger point tenderness in 18 of 18 tender points. (Tr. 1059). On September 17, 2009, Plaintiff showed trigger point tenderness in 14 of 18 tender points. (Tr. 1062). Finally, on November 20, 2009, Dr. Tidmore noted that Plaintiff had "diffuse trigger point tenderness". (Tr. 1110). The ALJ failed to mention either of Dr. Tidmore's examinations that showed Plaintiff had the presence of more than 11 of 18 tender points.

Furthermore, it is not clear that the ALJ considered any of the medical evidence showing other fibromyalgia symptoms in his analysis of Plaintiff's fibromyalgia. (*See* Tr. 21-22). For instance, Plaintiff was treated several times for depression, which is a symptom of fibromyalgia. Plaintiff was admitted to the Archbold Medical Center on May 29, 2009 due to depression and suicidal ideations. (Tr. 948). Plaintiff was treated at Georgia Pines from May of 2009 through March of 2010 for depression. (Tr. 971, 973, 1065, 1066, 1391, 1392, 1396). Plaintiff was also

admitted at Archbold Medical Center on January 13, 2010 for depression.  (Tr. 1368).   The record indicates that she had been seen at the emergency room three times that week due to uncontrolled pain.  (Tr. 1368).   Additionally, the medical evidence shows that Plaintiff has complaints of numbness in her legs and feet.  (*See* Tr. 632, 1054, 1059, 1061, 1062).

"Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (internal quotations omitted).   "Although the ALJ is not required to specifically refer to every piece of evidence in the record, he is required to explain the weight he afforded to obviously probative exhibits".  *Lawton v. Comm'r of Social Sec.*, 431 Fed. Appx. 830, 835 (11th Cir. 2011) (internal quotations omitted).

Herein, the ALJ failed to discuss objective medical evidence regarding Plaintiff's fibromyalgia.  There was no discussion regarding Plaintiff's positive trigger points.   It is also unclear if the ALJ analyzed Plaintiff's symptoms in light of her fibromyalgia, which is probative in a fibromyalgia case. *See Somogy*, 366 Fed.Appx. at 64 ("Given the nature of fibromyalgia, a claimant's subjective complaints of pain are often the only means of determining the severity of a patient's condition and the functional limitations caused thereby.").   Without clearly articulated findings of fact, and without explaining the weight of obviously probative exhibits, the ALJ has not provided sufficient reasoning for this Court to determine if the ALJ properly analyzed all the evidence and applied the proper legal analysis.  *See Cornelius*, 936 F.2d at 1145 - 46 (failure to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates

reversal". As it is unclear if the ALJ's opinion is supported by substantial evidence, remand for further discussion of the record regarding Plaintiff's fibromyalgia is necessary.

*Plaintiff's Credibility*

Plaintiff also alleges that the ALJ's finding that Plaintiff lacked credibility was not based on substantial evidence. (Doc. 18). If the Commissioner "finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain," then he must consider the claimant's subjective testimony of the symptoms. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

To determine if Plaintiff's statements of an alleged symptom are credible, the ALJ must consider the intensity, persistence, and limiting effect of the symptoms, using Plaintiff's testimony, including activities of daily living, and objective medical records as evidence. 20 C.F.R. § 404.1529(c). The ALJ must consider the record as a whole, including objective medical evidence, the individual's own statements about the symptoms, statements and other information provided by treating or examining physicians, psychologists, or other individuals, and any other relevant information. SSR 96-7p. The Commissioner is entitled to "consider whether there are any inconsistences in the evidence, and the extent to which there are any conflicts between [Plaintiff's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4).

Social Security Ruling 96-7p sets out the proper procedure for evaluation of an individual's credibility, and clarifies when the evaluation of symptoms, including pain, requires a finding regarding the credibility of an individual's statements. In evaluating credibility, the adjudicator may look to factors including but not limited to: 1) the medical signs and laboratory findings and statements issued

by treating or examining physicians; 2) the claimant's history and treatment; 3) the claimant's prior work record and efforts to work; 4) the claimant's daily activities.  SSR 96-7p; 20 C.F.R. ▪ 404.1529.  However, Plaintiff cannot be deemed to lack credibility solely because her testimony is not substantiated by objective medical evidence.  SSR 96-7p.

In this case, while it is unclear, the ALJ appears to discredit Plaintiff's complaints of disabling pain caused by her fibromyalgia due to the fact that the objective medical evidence does not support Plaintiff's complaints of pain, and because Plaintiff "testified to a fairly robust list of activities of daily living at the hearing."  (Tr. 22-23).

The ALJ cannot discredit Plaintiff's complaints of disabling pain due to her fibromyalgia because there is a lack of objective medical evidence.  *See Moore*, 405 F.3d at 1211 ("Because [fibromyalgia]'s hallmark is [ ] a lack of objective evidence, [it is reversible error if] an ALJ[ ] determin[es] that a fibromyalgia claimant's testimony was incredible based on the lack of objective evidence documenting the impairment.").  Herein, the ALJ states that "the medical evidence of record shows that the claimant is not fully credible", and then, in large part, discusses medical evidence related to Plaintiff's mental health.  (Tr. 22-23).  It is unclear from the ALJ's decision if he is discrediting Plaintiff's complaints of disabling pain because of a lack of medical evidence, or if his discussion contemplates Plaintiff's complaints of disabling pain in light of her severe impairment of fibromyalgia.  The ALJ's decision does not provide sufficient reasoning for discrediting Plaintiff's complaints of pain; thus, this Court cannot determine if the ALJ applied the proper legal analysis.

Furthermore, "participation in everyday activities of short duration, such as housework or fishing, [does not] disqualif[y] a claimant from [receiving] disability [benefits]."  *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).  The Commissioner, however, may rely on a claimant's daily

activities, among other evidence, in making a disability determination. *Hoffman v. Astrue*, 259 Fed.Appx. 213, 219 (11th Cir. 2007).

In regard to her daily activities, Plaintiff testified at the ALJ hearing that she sometimes cooks, but has to "cook a little bit and sit down." (Tr. 34). Plaintiff also sometimes vacuums, mops, and sweeps, but she does it in the latter part of the day so her children can help. (Tr. 34-35). She occasionally takes out the trash, and when she shops for groceries, Plaintiff needs the assistance of her children, her sister, or her friends. (Tr. 35). Plaintiff does not walk at the grocery store, but must sit in a motorized cart. (Tr. 35). Plaintiff testified to a limited amount of daily activities due to her pain, and does not appear to perform a "robust list" of daily activities. As such, the ALJ's opinion regarding Plaintiff's level of daily activities does not appear to be supported by substantial evidence.

On remand, the ALJ should determine if, based on all the evidence, Plaintiff's testimony is credible. If the ALJ determines Plaintiff's complaints of disabling pain are not credible, the ALJ must clearly articulate his reasons in his decision. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988) (the ALJ's conclusory statements regarding the claimant's subjective complaints were insufficient and required a remand); *Walker v. Bowen*, 826 F.2d 996, 1004 (11th Cir. 1987) (remanding the case when the ALJ did not consider the claimant's allegations of pain in any detail, but simply found neither the medical evidence nor the claimant's testimony supported the existence of the alleged pain); *McGauley v. Astrue*, 2008 WL 3200281, *8 (M.D. Fla. Aug. 5, 2008) (remanding case with instruction that "the ALJ should consider the record as a whole, making sure to address the relevant evidence and whether it supports or contradicts Plaintiff's pain testimony, and to explicitly and adequately justify his conclusions if he determines Plaintiff's testimony is not credible".

8

Additionally, the ALJ afforded little weight to the opinion evidence provided by Plaintiff's sister, Kristy McCollough, because "she has a personal relationship with [Plaintiff], and a supportive opinion is fully expected[.]" (Tr. 24). The fact that a witness has a personal relationship with the claimant cannot be the grounds for rejecting an opinion. *See Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999); *Morgan v. Barnhart*, 142 Fed. Appx. 716, 724 (4th Cir. 2005) (in *dicta* agreed that an ALJ could not simply discredit lay evidence based on an inherent familiar bias). Therefore, on remand, the ALJ should reconsider the lay evidence provided by Kristy McCollough, and state, with specificity, his reasons for accepting or rejecting her opinion.

*Physician Opinions*

Plaintiff alleges that the ALJ failed to give proper weight to the opinions of Drs. Ronald McLean, John Beaty, and Michael Wager when determining Plaintiff's RFC. (Doc. 18). When deciding the evidence, "[t]he testimony of the treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner's regulations also state that more weight should be given to opinions from treating sources because they can provide a detailed look at the claimant's impairments. 20 C.F.R. § 404.1527(d)(2). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records. *Id.*

9

*Dr. McLean*

The ALJ gave "no weight" to the opinions of Dr. McLean, Plaintiff's treating physician, because his opinions were not supported by the medical evidence of record, were conclusory, and because Dr. McLean did not cite to objective medical findings.  (Tr. 24).   Plaintiff asserts that the ALJ failed to properly reject Dr. McLean's November 2009 opinion, January 2010 opinion, and April 2010 opinion.  (Doc. 18).   In November of 2009, Dr. McLean filled out a questionnaire wherein he stated that Plaintiff would be unable to work for a year or more because of her present conditions.   (Tr. 1178).  Dr. McLean wrote a letter in January of 2010 stating that Plaintiff "is unable to return to the work force.   She is permanently disabled as a result of [her] medical problems."   (Tr. 1177).

On April 16, 2010, Dr. McLean submitted a Medical Source Statement of Ability to do Work-Related Activities (Physical) wherein he opined that Plaintiff could frequently lift or carry less than 10 pounds, could stand and/or walk less than 2 hours in an 8 hour workday, and was limited in her ability to push and/or pull in both her upper and lower extremities.  (Tr. 1374-75).   Dr. McLean also stated that Plaintiff could never climb, balance on narrow, slippery or erratic surfaces, kneel, or crawl.  (Tr. 1375).   Plaintiff could occasionally crouch and stoop, and could frequently balance while standing or walking on level terrain.  (Tr. 1375).   Plaintiff was limited in reaching and handling due to her carpal tunnel syndrome, and Dr. McLean opined that Plaintiff's fibromyalgia may be affected by environmental limitations such as temperature changes, humidity, chemicals, and fumes.  (Tr. 1376).

The Court notes that Dr. McLean's opinions that Plaintiff is unable to work are not given special significance, and were therefore properly rejected by the ALJ.   The ultimate responsibility for deciding if a claimant is disabled is reserved for the Commissioner.   *See* 20 C.F.R. § 416.927(d).  "[W]hether [Plaintiff can] hold a job is a vocational opinion, not a medical one.   That question is

10

reserved to the ALJ." *Hutchinson v. Astrue*, 408 Fed.Appx. 324, 328 (11th Cir. 2011). The Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner[.]" *Id.* at § 416.927(d)(3). As such, the ALJ did not err when he did not give any weight to the November 2009 or January 2010 opinions, as the opinions only state that Plaintiff is unable to work and is disabled.

The ALJ gave no weight to the April 2010 opinion of Dr. McLean because "a review of the medical evidence of record (including Dr. McLean's own treatment notes) reveals that there is a dearth of objective findings to support his opinion." (Tr. 24). Dr. McLean's treatment notes show that he treated Plaintiff for complaints of headaches, nausea, and arm and back pain throughout 2008. (*See* Tr. 613, 625, 631). Dr. McLean noted several times that Plaintiff appeared to be having problems as a result of her hypertension and diabetes. (*See* Tr. 611, 625, 631, 976, 1085, 1086). On May 1, 2009, Plaintiff was seen for depression and total body aches, specifically in her torso. Dr. McLean noted that Plaintiff had a family history of fibromyalgia, and Plaintiff had point tenderness along the head of the trapezius, in her upper arm, and back area. (Tr. 980). Dr. McLean found that Plaintiff needed to be off work for six weeks due to her chronic illness. (Tr. 981).

Dr. McLean sent Plaintiff to a rheumatologist for an evaluation of fibromyalgia. (Tr. 982). In June of 2009, Dr. McLean completed a physical examination of Plaintiff; he found Plaintiff had tenderness to palpation in her spine, and right and left upper extremities, and he noted some pain on motion. (Tr. 984-85). However, Plaintiff had normal range of motion of her spine, her right and left upper extremities, and her right and left lower extremities. (Tr. 984-85). Her stability was normal. (Tr. 984-85). During a physical evaluation in September of 2009, Dr. McLean found Plaintiff's motor strength was 5/5, her gait was normal, and her deep tendon reflexes were + 1 equal bilaterally. (Tr.

1096).

A "treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Dr. McLean's treatment notes and objective medical tests do not support the limitations provided in the April 2010 opinion. It does not appear there is any evidence of carpal tunnel syndrome, nor do the treatment notes contain any evidence that Plaintiff was experiencing physical limitations as a result of her fibromyalgia. As such, substantial evidence supports the ALJ's finding that Dr. McLean's treatment notes and the objective medical tests did not support his opinion regarding Plaintiff's limitations. Accordingly, the ALJ did not commit error when he gave no weight to Dr. McLean's April 2010 opinion.

The undersigned finds that there is substantial evidence to support the ALJ's decision to give no weight to Dr. McLean's November 2009, January 2010, and April 2010 opinions, and therefore, the ALJ did not err in his analysis of Dr. McLean's opinions.

*Drs. Beaty and Wager*

Plaintiff also maintains that the ALJ erred when he afforded little weight to the opinions of Dr. Beaty and Dr. Wager, mental health professionals employed at Georgia Pines. (Doc. 18). Dr. Beaty submitted a Psychiatric Review Technique wherein he stated that, as of May 2, 2009, Plaintiff meets Listing 12.04. (Tr. 1379). Dr. Wager opined that Plaintiff is "totally disabled for any type of gainful employment" as a result of her depression and pain. (Tr. 1386). Dr. Wager stated that Plaintiff's "depression is chronic and debilitating and its prognosis is guarded because of her comorbid chronic

pain syndrome and her mood disorder[.]"  (Tr. 1386).[1]

The ALJ noted that Dr. Wager did not treat Plaintiff, but was merely the individual at Georgia Pines responsible for completing disability assessments.  (Tr. 23).  The ALJ stated that he gave little weight to the opinions of Dr. Beaty (which appears to be the 3 page opinion signed by Dr. Wager) because his opinions were conclusory and not based on objective test results, and because Plaintiff testified to performing daily activities that Dr. Beaty stated Plaintiff could not perform. (Tr. 23).

Initially, Dr. Beaty's opinion that Plaintiff met Listing 12.04, and was therefore disabled, is a decision reserved for the Commissioner and is not afforded any significant weight.  *See* 20 C.F.R. § 416.927(d).  Dr. Wager did not treat Plaintiff, and it appears from the record that Dr. Beaty saw Plaintiff on only a few occasions.  (Tr. 1391-92).   Due to the lack of treatment provided by Drs. Beaty and Wager, there is substantial evidence to give the opinions less weight.  *See Gainous v. Astrue*, 402 Fed. Appx. 472, 474, n. 2 (11th Cir. 2010) (noting that the court "has refused to give greater weight to the opinion of a physician who only examined the plaintiff once"); *Sanabria v. Commissioner of Soc. Sec.*, 303 Fed.Appx. 834, 838 (11th Cir. 2008) (one factor relied on by the ALJ when determining what weight to give a treating physician is "the length of the treatment relationship and the frequency of examination").

Moreover, the ALJ found the opinions of Drs. Beaty and Wager to be conclusory, and unsupported by the objective medical evidence. (Tr. 23).  "The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments."  *Wheeler v. Heckler*,

---

[1] The Court notes that it appears from the record that the ALJ has credited Dr. Wager's three page analysis of Plaintiff's history and functional abilities to Dr. Beaty.  (*See* Tr. 23; 1384-86).

784 F.2d 1073, 1075 (11th Cir. 1986).   Both Drs. Beaty and Wager provided conclusory statements that Plaintiff's symptoms are severe and that Plaintiff cannot perform activities of daily living, but provided no medical evidence to support their opinions of Plaintiff's limitations.   (*See* Tr. 1386).

The treatment notes from Georgia Pines show that, on May 29, 2009, Plaintiff was assessed at Georgia Pines, and was voluntarily admitted into an inpatient program due to thoughts of harming herself.   (Tr. 1076).   In June of 2009, Plaintiff was seen by Dr. Eric Fan, DO, at Georgia Pines. (Tr. 971).   He noted Plaintiff had moderate, major depression, recurrent.   (Tr. 971).   Plaintiff reported that she heard voices, and felt depressed, irritable, and easily aggravated.   (Tr. 973). Plaintiff stated that she received a little benefit from her Cymbalta prescription, and Dr. Fan increased the prescription. (Tr. 973).   In July 2009, Plaintiff's mood was depressed, but her mental status was stable.   (Tr. 1066).   By October 14, 2009, Plaintiff had no psychosis and her mental status was stable.   (Tr. 1065).   Plaintiff's difficulties sleeping and eating were reportedly due to her level of pain.   (Tr. 1065).

In January 2010, Plaintiff was first seen by Dr. Beaty.   (Tr. 1392).   Plaintiff's mood was depressed, irritable, and anxious, but her mental status appears to have been stable.   (Tr. 1392).   In February 2010, Dr. Beaty reported Plaintiff's mood was depressed and irritable, but it appears Plaintiff's mental status was stable and Plaintiff had no psychosis.   (Tr. 1391).   By March 11, 2010, nursing progress notes stated that Plaintiff had "major depression –mild". (Tr. 1396).

Further, when Plaintiff was hospitalized in January 2010 for suicidal thoughts, she denied any active suicidal ideations, stated that she believed her pain, not depression, required immediate attention, and she denied any active auditory or visual hallucinations. (Tr. 1369).   "Prior to [her] hospitalization, [Plaintiff] reports a stable mood with preserved sleep, energy, and appetite."   (Tr.

1369).   During her mental status examination, Plaintiff was calm, pleasant, and interactive; she reported her mood was "pretty good".   (Tr. 1370).

The treatment notes of Georgia Pines do not support the opinions of Drs. Beaty and Wager. Plaintiff remained stable throughout her treatment, and did not report voices or hallucinations after June of 2009.   Additionally, the evaluation from Plaintiff's hospital stay, which found Plaintiff's affect and mood to be good, discredits Drs. Beaty and Wager's opinions.   The treatment notes from Georgia Pines and other medical evidence are not consistent with the opinions of Drs. Beaty and Wager.   Thus, there is substantial evidence to support the ALJ's decision to afford little weight to the opinions of Drs. Beaty and Wager, and the ALJ did not err.

## CONCLUSION

As the Commissioner's decision in this matter is not supported by substantial evidence, it is the recommendation of the undersigned that the Commissioner's decision be **REVERSED AND REMANDED** pursuant to Sentence Four of § 405(g).   It is the undersigned's recommendation that on remand the ALJ further consider the record regarding Plaintiff's fibromyalgia.   It is also recommended that the ALJ reevaluate Plaintiff's testimony and complaints of pain to determine if she is credible in light of her fibromyalgia, and provide clearly articulated reasons for his decision to credit or discredit Plaintiff's complaints of disabling pain.   On remand, the ALJ should also reconsider the lay evidence provided by Plaintiff's sister, Kristy McCollough, and state appropriate reasons for accepting or rejecting this evidence.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this Recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED** this 16th day of January, 2013.

                                                  s/ ***THOMAS Q. LANGSTAFF***
                                                  **UNITED STATES MAGISTRATE JUDGE**